UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JASON M. H.,[1]

    Plaintiff,

v.     Action No. 4:22cv12

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Jason M. H. ("plaintiff") filed this action for review of a decision by the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

An order of reference assigned this matter to the undersigned. ECF No. 7. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is recommended that plaintiff's motion for summary judgment (ECF No. 12) be **DENIED**, and the Commissioner's motion for summary judgment (ECF No. 14) be **GRANTED**.

---

[1] In accordance with a committee recommendation of the Judicial Conference, plaintiff's last name has been redacted for privacy reasons. Comm. on Ct. Admin. & Case Mgmt. Jud. Conf. U.S., Privacy Concern Regarding Social Security and Immigration Opinions 3 (2018).

## I.    **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits in January 2020, alleging he became disabled on August 1, 2017. R. 228–29.[2] Plaintiff alleges disability due to post-traumatic stress disorder ("PTSD"), anxiety, adjustment disorder, attention deficit disorder, concentration disorder, depressive disorder, insomnia, thoracolumbar spine strain, cervical spine strain, and hypertension. R. 250. Following the state agency's denial of his claim, both initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 130–34, 140–142, 147–48. ALJ Maryann S. Bright held two telephonic hearings on November 17, 2020, and September 28, 2021. R. 38–63, 68–93. Plaintiff was represented by counsel at both hearings. The ALJ issued a decision denying benefits on October 20, 2021. R. 12–37. The Appeals Council denied plaintiff's request for review of the ALJ's decision on December 21, 2021. R. 1–6. Therefore, ALJ Bright's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 404.981.

Having exhausted administrative remedies, plaintiff filed a complaint on February 2, 2022. ECF No. 1. The Commissioner answered on April 25, 2022. ECF No. 5. In response to the Court's order, plaintiff and the Commissioner filed motions for summary judgment, with supporting memoranda, on June 10 and July 1, 2022, respectively. ECF Nos. 12–15. As no special circumstances exist that require oral argument, the case is deemed submitted for a decision.

---

[2] Page citations are to the administrative record that the Commissioner previously filed with the Court.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff argues that the ALJ's residual functional capacity ("RFC") finding differs significantly from the state agency mental health experts' opinions, which the ALJ found persuasive, without explanation. Pl.'s Br. In Supp. Mot. Summ. J. ("Pl.'s Br."), ECF No. 13, at 8–10. Plaintiff also contends that one of the three jobs the vocational expert ("VE") testified that a person with similar characteristics to plaintiff could perform conflicted with plaintiff's mental abilities the ALJ set forth in the RFC. Pl.'s Br. 10–11. Therefore, plaintiff argues, the ALJ improperly relied on the VE's testimony in denying benefits at step five. *Id.* The Court's review of the facts below is tailored to these arguments.

### A. *Background Information and Hearing Testimony by Plaintiff*

At the initial hearing on November 17, 2020 before the ALJ, plaintiff provided the following information. He was then 50 years old, married with two children, and living with his wife and youngest son in Williamsburg. R. 73. Plaintiff completed a year and a half of college, but he does not have a degree. R. 74–75. Plaintiff has not worked since he retired in August 2017. R. 72, 75. Prior to retiring, plaintiff worked as an equal opportunity advisor in the Army. R. 75. Before that, plaintiff was a flight engineer crew chief on a helicopter for most of his military career. R. 76. Plaintiff testified that he cannot work because he cannot focus, has a fear of being around groups, "stupid people" irritate him, he has back issues, and feels safer at home. R. 77. He testified that he has PTSD, trouble sleeping, back pain, hand pain, is unable to stand or sit for a long time, and walks with a cane. R. 87–88.

At the second hearing on September 28, 2021, plaintiff's testimony was similar to that initially provided, except for new details about his conditions and how they affect his functionality. R. 38–63.

### B. *Hearing Testimony by Vocational Expert*

On September 28, 2021, VE Barbara Byers, testified at the hearing.[3] R. 38, 56–63. Based on the ALJ's hypotheticals, VE Byers opined that someone with plaintiff's age, education, work history, and RFC could not perform plaintiff's past relevant work, but could perform certain light and unskilled jobs in the national economy, such as mail sorter, mailing clerk, and folding machine operator. R. 59–60. VE Byers added that someone with unscheduled absences more than once per month and someone who is off task more than 10% of the workday would be precluded from work. R. 61.

### C. *Medical Opinions of State Agency Experts*

In March 2020, Andrew Bockner, M.D., reviewed plaintiff's medical record. R. 105–07. Dr. Bockner assessed plaintiff's mental RFC and found that plaintiff: (1) can process basic memories and "can understand, retain, and follow simple job instructions, i.e., perform at least one and two step tasks"; (2) can work within a schedule and at a consistent pace and "is able to maintain concentration and attention for extended periods of time"; (3) can ask simple question and accept instruction; (4) can perform "at least production oriented tasks requiring little independent decision making"; (5) reported "no problems bathing, caring for hair, or shaving" and can mow the lawn, do small household repairs, drive, handle money, and go to church; and (6) can still perform competitive work. *Id.*

---

[3] The original hearing was on November 17, 2020, and VE Linda Augins testified. R. 89–93. That said, the parties focused on the latter hearing because VE Byers was presented with a hypothetical RFC that contained more limitations. The Court will do the same and focus on VE Byers' testimony.

At the reconsideration level, in June 2020, a state agency psychologist, Eric Oritt, Ph.D., reviewed plaintiff's medical record. R. 122–24. Dr. Oritt reached findings identical to those of Dr. Bockner. *Id.*

### III. THE ALJ'S DECISION

To evaluate plaintiff's claim of disability,[4] the ALJ followed the five-step analysis set forth in the SSA's regulations. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ considered whether plaintiff: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; (4) had an impairment that prevents him from performing any past relevant work in light of his RFC; and (5) had an impairment that prevents him from engaging in any substantial gainful employment. R. 16–31.

The ALJ found that plaintiff met the insured requirements[5] of the Social Security Act through December 31, 2022, and had not engaged in substantial gainful activity since August 1, 2017, the alleged onset date. R. 17.

At steps two and three, the ALJ found that plaintiff had the following severe impairments: (a) PTSD; (b) major depressive disorder; (c) attention deficit hyperactivity disorder; (d) insomnia;

---

[4] To qualify for DIB, an individual must meet the insured status requirements of the Social Security Act, be under age 65, file an application, and be under a "disability" as defined in the Act. "Disability" is defined, for the purpose of obtaining disability benefits, "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To meet this definition, the claimant must have a "severe impairment" making it impossible to do previous work or any other substantial gainful activity that exists in the national economy. *Id.*

[5] In order to qualify for DIB, an individual must also establish a disability that commenced on or before the last day in which that individual met the insured status requirements of the Social Security Act. *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131(b).

(e) degenerative disc disease; and (f) "degenerative joint disease, status post bilateral shoulder surgery." *Id.* The ALJ classified plaintiff's other physical impairments as non-severe because "either they did not exist for a continuous period of twelve months, they were responsive to medication, they did not require any significant medical treatment, or they did not result in any continuous exertional or nonexertional functional limitations." R. 18. The ALJ determined that plaintiff's severe impairments, either singly or in combination (along with his other conditions), failed to meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as required for a finding of disability at step three. R. 18–22.

The ALJ next found that plaintiff possessed an RFC to perform light work, *see* 20 C.F.R. § 404.1567(b), subject to the limitations that he can: (a) only occasionally climb ramps and stairs; (b) only occasionally stoop, crouch, kneel, and crawl; (c) never climb ladders, ropes, or scaffolds; and (d) only occasionally reach overhead. R. 22–30. The ALJ also found that, in terms of mental abilities, plaintiff: (a) can apply commonsense understanding; (b) carry out uninvolved instructions to perform simple, routine, and repetitive tasks on a regular and sustained basis to complete a normal workday and week; (c) can complete job tasks requiring only occasional decisionmaking, occasional changes in the work setting, and occasional interaction with coworkers, supervisor, and the general public; and (d) cannot tolerate fast-paced tasks, such as assembly-line jobs involving production quotas. R. 22–23.

At step four, the ALJ found that plaintiff could not resume any past relevant work, including working as an equal opportunity advisor and flight engineer. R. 30. Finally, at step five, the ALJ found, having considered the VE's testimony and plaintiff's age, education, work experience, and RFC, that plaintiff could perform other jobs in the national economy, such as mail sorter, marking clerk, and folding machine operator. R. 30–31. Accordingly, the ALJ concluded

plaintiff was not disabled from August 1, 2017, through October 20, 2021, the date of the ALJ's decision, and was ineligible for a period of disability or DIB. R. 31.

### IV. STANDARD OF REVIEW

In reviewing a Social Security disability decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting the substantial evidence standard is "more than a mere scintilla," but "is not high"). When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is

appropriate only if either (a) the record is devoid of substantial evidence supporting the ALJ's determination, or (b) the ALJ made an error of law. *See id.*

## V. ANALYSIS

### A. *The ALJ's RFC finding does not conflict with the state agency mental health experts' mental RFC.*

Under 20 C.F.R. § 404.1520a, when the SSA is evaluating the severity of mental impairments, a special technique is used to rate a claimant's functional limitation based on the "extent to which [the claimant's] impairment(s) interferes with [his] ability to function independently appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). There are four broad functional areas that are rated including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404.1520a(c)(3). When rating a claimant's degree of limitation in the above areas, the following five-point scale is used: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). After rating the "degree of functional limitation" resulting from a claimant's impairments, the severity of those mental impairments is determined. *Id.* § 404.1520a(d) ("If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process."). A standard document is completed to record how this special technique was applied. *Id.* § 404.1520a(e).

This standard document is further described in the Social Security Program Operations Manual System ("POMS"). The POMS explains that "[b]ecause of the complexity of mental

8

disorder evaluation, a special Form SSA-4734-F4-SUP is to be used to document the mental residual function capacity (RFC) decision." POMS § DI 24510.060(A)(1), https://secure.ssa.gov/poms.nsf/lnx/0424510060 (last visited Dec. 21, 2022). This form has several different sections. Relative to the issue at hand, there are two key sections: the mental activity ratings (section I) and the mental RFC (section III).[6] *Id.* § DI 24510.060(B)(2), (B)(4).

The mental activity ratings section (section I) is where state agency mental health experts use the five-point scale to rate a claimant's degree of limitation in the four functional areas. *Compare* 20 C.F.R. § 404.1520a(c)(3)–(4) (listing the four functional areas and the five-point scale ratings), *with* POMS § DI 24510.060(B) (explaining the sections in special Form SSA-4734-F4-SUP). The mental activity ratings section is "merely a worksheet to aid in deciding the presence and degree of function limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060(B)(2)(a).

The mental RFC section (section III) is where the state agency experts record the "actual mental RFC assessment." POMS § DI 24510.060(B)(4)(a). This is the narrative explanation of "the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in the work setting." *Id.*

The disability determination explanation also sets forth this distinction between the mental activity ratings section and the mental RFC section. The document reads:

---

[6] The disability determination explanation is identical in substance to special Form SSA-4734-F4-SUP but different in form. In the disability determination explanation, the mental RFC comes at the end of each of the four functional areas rather than at the end of the entire assessment as in special Form SSA-4734-F4-SUP. Put another way, in the disability determination explanation the mental RFC can be found following the words "[e]xplain in narrative form," rather than being in its own section as in the form. Additionally, the disability determination explanation has a section at the end of the assessment for any "[a]dditional [e]xplanation[s]" that is also part of the mental RFC. POMS § DI 24510.060(B)(4)(a).

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

R. 105, 122.

Against this backdrop, the Court turns to plaintiff's contention. Plaintiff argues that the ALJ erred by not explaining why she did not include the state agency mental health experts' mental activity ratings in her RFC, even though she found their opinions to be persuasive. Pl.'s Br. 8–10; *see* R. 29 ("The [ALJ] finds that opinions of the State agency psychological consultants to be persuasive as they are supported by test results, observations, and findings on mental status examination, the conservative treatment history, and evidence of up to 90% improvement with medication management and psychotherapy."). Plaintiff highlights that the state agency mental health experts rated plaintiff as "moderately limited" in several areas, Pl.'s Br. 9, such as his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," R. 106, 123. Yet, neither of these limitations is found in the ALJ's RFC finding.[7] Pl.'s Br. 9. Plaintiff contends that the ALJ erred in excluding such limitations from the RFC. *Id.*

---

[7] Plaintiff contends that moderate limitation in these activities means that plaintiff would be precluded from work because "the VE testified that anything more than one absence per month" would preclude plaintiff from all work in the national economy. Pl.'s Br. 9. Although the Court need not address this contention, it bears noting that a "moderate limitation" means that a person has a "fair" ability to function in the area "independently, appropriately, and effectively on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).

10

As argued by the Commissioner, however, plaintiff mistakenly conflates the state agency experts' mental activity ratings and the mental RFC. *See* Mem. Supp. Def.'s Mot. Summ. J. and in Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem."), ECF No. 15, at 7–8. The ALJ need not incorporate the mental activity ratings into the RFC. As already explained, the mental activity ratings differ from the mental RFC. The mental activity ratings are only an aid to the state agency mental health experts in forming the mental RFC assessment. Therefore, the ALJ was not required to incorporate the mental activity ratings found in section I into her RFC finding. *See Joetta G. v. Kijakazi*, No. 4:20cv133, 2021 WL 8086712, at *7 (E.D. Va. Aug. 6, 2021), *report and recommendation adopted*, 2021 WL 4130514 (E.D. Va. Sept. 8, 2021) (citing *Pippen v. Astrue*, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug. 24, 2010), *report and recommendation adopted*, 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010)).

For example, in *Pippen v. Astrue*, the court found that the plaintiff was mistaken in arguing that "because the state agency medical consultant found that he had some moderate limitations . . . the ALJ was required to adopt these moderate limitations into his RFC determination." *Pippen*, 2010 WL 3656002, at *6. Citing to the POMS explanation of the purpose of each section, the court explained that "[t]he ALJ is under no obligation to accept . . . conclusions[] found in Section I of the Mental RFC form." *Id.* Rather, "the narrative portion of the report in Section III is intended to be the experts' RFC opinion." *Joetta G.*, 2021 WL 8086712, at *7 (citing *Stephens v. Colvin*, No. 3:14cv25232, 2015 WL 7301684, at *16 (S.D.W. Va. Oct. 26, 2015), *report and recommendation adopted*, 2015 WL 7302768 (S.D.W. Va. Nov. 18, 2015)).

In this case, the ALJ did, in fact, incorporate the state agency experts' mental RFC findings into the RFC selected. The ALJ found that plaintiff

> [I]s able to apply commonsense understanding and carry out uninvolved instructions to perform simple, routine, and repetitive tasks on a regular and

11

> sustained basis to complete a normal workday and week. He is capable of completing job tasks requiring only occasional decision making, occasional changes in the work setting, and occasional interaction with coworkers, supervisors, and the general public. He cannot tolerate fast-paced tasks, such as assembly line jobs involving production quotas.

R. 22–23. In the state agency experts' mental RFC analysis, they found that, in terms of plaintiff's ability to remember and understand, his "basic memory processes are intact" and he "can understand, retain, and follow simple job instructions, i.e., perform at least one and two step tasks." R. 105, 123. In evaluating plaintiff's ability to concentrate and persist, they found that plaintiff "is capable of working within a schedule and at a consistent pace" and that he "is able to maintain concentration and attention for extended periods of time." R. 106, 123. And, for his ability to interact with others, they found that plaintiff "is capable of asking simple questions and accepting instruction." R. 106–07, 124. Lastly, the state agency experts found that, in relation to plaintiff's ability to adapt, plaintiff "can perform at least production oriented tasks requiring little independent decision making." R. 107, 124. These determinations were necessarily informed by the mental activity ratings and other information evaluated by the state agency experts. Thus, the plaintiff's abilities and limitations contained in the ALJ's RFC finding are substantially based upon the state agency experts' opinions set out in their mental RFC narrative explanations. Further, to the extent that the ALJ herself assessed moderate limitations in pace and interaction with others in discussing the paragraph B criteria, R. 21–22, she adopted RFC limitations that fully accounted for the same.

Therefore, because the mental activity ratings serve as an aid in assessing the mental RFC, the ALJ did not need to explicitly include such ratings as part of the RFC findings. *Ritchie v. Astrue*, No. 2:11cv00012, 2012 WL 4458208, at *2 (W.D. Va. June 26, 2012) ("The ALJ did not err in omitting the additional limitations described in Section I of the form."). Accordingly, the

RFC established by the ALJ does not conflict with the state agency experts' mental RFC and the plaintiff's motion for remand should be **DENIED**.

### B. *The ALJ did not err in relying on the VE's testimony at step five of the analysis.*

At step five, the ALJ found that plaintiff could perform work as a mail sorter, marking clerk, and a folding machine operator. R. 30–31. Plaintiff asserts that there is an apparent conflict between the Dictionary of Occupational Titles ("DOT") description of mail sorter as requiring reasoning level three, and VE Byers' testimony that a hypothetical individual that "is able to apply common sense[] understanding and carry out uninvolved instructions to perform simple, routine, repetitive tasks on a regular and sustained basis" could perform that job. Pl.'s Br. 10–11 (arguing that plaintiff's mental RFC "specifically limits jobs at no higher than the DOT's Reasoning Level 2"); *see* R. 59–60 (VE's testimony).

The Commissioner argues that, regardless of any conflict between the mail sorter job and the DOT, plaintiff concedes there are still two jobs—marking clerk and folding machine operator—that are free of this conflict. Def.'s Mem. 10; Pl.'s Br. 11 ("Granted, the two other jobs cited are at [reasoning level 2], so this conflict does not apply to them."). Therefore, under Social Security Ruling 00-4p, the Commissioner's burden at step five is satisfied because two jobs still exist in significant numbers in the national economy. Def.'s Mem. 10.

An ALJ must reasonably resolve any apparent conflict between the VE's testimony and the DOT, as argued by plaintiff. Pl.'s Br. 10; *see Marvin J. v. Kijakazi*, No. 2:20cv356, 2021 WL 3719274, at *15 (E.D. Va. July 30, 2021), *report and recommendation adopted*, 2021 WL 3711179 (E.D. Va. Aug. 20, 2021) (explaining that the ALJ must independently identify whether any apparent conflicts exist, seek an explanation from the VE for any such conflict, and address whether the VE's explanation is reasonable and provides a basis for relying on the VE's testimony

13

rather than the DOT (citing *Pearson v. Colvin*, 810 F.3d 204, 208–11 (4th Cir. 2015))). However, under 20 C.F.R. § 404.1566(b), there only needs to be "one or more occupations" available in significant numbers in the national economy for the Commissioner to meet his burden at step five. Even if the job of a mail sorter required reasoning level three and conflicted with the RFC, two other jobs remain—marking clerk (200,000 jobs nationally) and a folding machine operator (50,000 jobs nationally)—that plaintiff could perform. *See* R. 60; *Rosalyn G. v. Kijakazi*, No. 2:21cv275, 2022 WL 1311473, at *9 (E.D. Va. Apr. 15, 2022), *report and recommendation adopted*, 2022 WL 1304538 (E.D. Va. May 2, 2022) ("To satisfy the burden at step five, the ALJ must identify only one occupation, if jobs in that occupation exist in significant numbers." (citing 20 C.F.R. § 404.1566(b))); *Doby v. Kijakazi*, No. 1:21cv00035, 2022 WL 2255713, at *13 (W.D. Va. June 23, 2022) (denying remand because one of the three jobs the VE found the plaintiff could perform was not in conflict with the ALJ's finding contained in the RFC). Accordingly, because plaintiff concedes that two jobs remain that are not in conflict with the RFC, and because such jobs are available in significant numbers in the national economy, plaintiff's motion for a remand should be **DENIED**.

## VI. RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion for summary judgment (ECF No. 12) be **DENIED**, and the Commissioner's motion for summary judgment (ECF No. 14) be **GRANTED**.

## VII. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 22, 2022